UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVERHAWK INC., dba LOWER SACRAMENTO CHEVRON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE FOOD AND NUTRITION SERVICE,<br><br>Defendant. | No. 2:15-CV-02470-MCE-EFB<br><br><br><br>**MEMORANDUM AND ORDER** |

Plaintiffs operate the so-called Lower Sacramento Chevron gas station ("Lower Sac Chevron") in Stockton, California. By way of the gas station's convenience store, Plaintiffs participate in the Supplemental Nutrition Assistance Program ("SNAP"), commonly known as the food stamp program ("Program") administered by Defendant United States Department of Agriculture Food and Nutrition Service ("USDA" or "Defendant"). From the end of 2014 through the beginning of 2015, the USDA conducted an investigation which culminated in a determination that Plaintiffs were violating various SNAP regulations by accepting food stamps for the purchase of tacos (an ineligible hot food) from a taco truck that did not qualify for participation in the Program. Pls.' Compl., Ex. 1, ECF No. 1-1, at 13-25. On July 1, 2015, the USDA thus

issued a decision suspending Plaintiffs from participating in the Program for three years. Keh Decl., Ex. B, ECF No. 10-2, at 18-19.  Plaintiffs appealed, and implementation of the suspension was held in abeyance during the pendency of that review.  See Id., Ex. 2, ECF No. 1-2.  On October 23, 2015, the suspension was affirmed, and Plaintiff initiated the instant action on November 30, 2015, the day the suspension was to take effect.  Id. Plaintiffs filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction that same day.  ECF No. 4.  The Court denied the TRO request the next day and set a hearing on Plaintiff's request for a preliminary injunction, which is now DENIED as well.[1]  ECF No. 5.

**STANDARD**

"A preliminary injunction is an extraordinary and drastic remedy."  Munaf v. Geren, 553 U.S. 674, 689 (2008) (internal quotation marks and citations omitted).  "[T]he purpose of a preliminary injunction is to preserve the status quo between the parties pending a resolution of a case on the merits."  McCormack v. Hiedeman, 694 F.3d 1004, 1019 (9th Cir. 2012).  A plaintiff seeking a preliminary injunction must establish that: (1) he is "likely to succeed on the merits"; (2) he is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest."  Winter v. Natural Res. Defense Council, 555 U.S. 7, 20 (2008).  "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"  Id. at 24 (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987)).  A district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief."  Id. at 22.  Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

2

harm and shows that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in the plaintiffs' favor. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

## ANALYSIS

Plaintiffs contend that preliminary injunctive relief is appropriate because: (1) "any punishment, let alone a three-year suspension is excessive given the circumstances of this case"; and (2) because "SNAP benefits consist of about 35% of [Lower Sac Chevron's] income . . . [a] three-year suspension will almost certainly cause the ten-year-old business to close down." Pls.' Mot. at 5-8.[2]  Defendant disagrees, arguing that: (1) Plaintiffs cannot show a likelihood of success on the merits because they failed to show that Defendant's suspension decision was arbitrary and capricious; and (2) Plaintiffs' bare assertion that 35% of Lower Sac Chevron's revenue is derived from SNAP transactions is contrary to the evidence and insufficient to establish a likelihood of irreparable harm. Def.'s Opp. at 6-7. Defendant's arguments are well taken.

"The [SNAP Program] allows authorized stores to accept food coupons issued by the Department of Agriculture as payment for food items." Kim v. United States, 121 F.3d 1269, 1271 (9th Cir. 1997). "However, an authorized grocery store may be fined a civil money penalty or disqualified from participating in the Food Stamp Program for a specified period of time or permanently for violating any of the provisions of the Food Stamp Act or its implementing regulations." Id.  SNAP participants are forbidden

---

[2] Plaintiff also makes the conclusory, and so far entirely unsupported, argument that "[t]he USDA has harmed Plaintiffs by granting preferential treatment to white citizens of SNAP Food Stamp Program in the enforcement of its regulations and imposition of penalties and withholding this same treatment from non-white citizens of the program." Id. at 6. Not only have Plaintiffs failed to put on any evidence that this is the case, but the Complaint also lacks any facts setting forth any sort of discrimination claim. Accordingly, this argument is insufficient to warrant the granting of Plaintiffs' requested relief.

1 from processing benefits for ineligible hot foods and from accepting coupons from
2 unauthorized firms.  See 7 C.F.R. § 271.2 (defining eligible food); id., § 278.6(e)(2)(v)
3 (recognizing that accepting coupons from an unauthorized firm is prohibited).

4   "Any grocery store fined or disqualified under the Food Stamp Act may bring an
5 action for judicial review challenging the penalty by filing a complaint against the United
6 States in federal district court."  Kim, 121 F.3d at 1271-72.  USDA suspension decisions
7 "shall . . . remain in full force and effect" during such litigation.  See 7 U.S.C.
8 § 2023(a)(17).  To overcome the presumption that Defendant's decision should remain
9 in effect, Plaintiffs are required to establish that they are likely to prevail on the merits
10 and that they will suffer irreparable harm absent a stay.  Id.; see also 7 C.F.R. §
11 279.7(d).  They have not.

12   To prevail on the merits, Plaintiffs must show that the USDA's disqualification
13 decision was arbitrary and capricious.  See Wong v. United States, 859 F.2d 129, 131
14 (9th Cir. 1988).  Since Plaintiffs have not denied that Lower Sac Chevron sold ineligible
15 hot food items from an ineligible vendor in violation of the above regulations, the primary
16 question before the Court is thus whether Plaintiffs are likely to succeed on their claims
17 that Defendant nonetheless improperly suspended their participation in the SNAP
18 Program as a consequence.  In keeping with the applicable regulations, the USDA
19 determined that Lower Sac Chevron had accepted benefits from an unauthorized store
20 and had not been previously warned about or sanctioned with regard to the above
21 violations and applicable consequences.   7 C.F.R. § 278.6(e)(2)-(3).  Plaintiffs do not
22 make any real attempt to challenge any of these findings.  Accordingly, under these
23 circumstances, the appropriate sanction is a three-year suspension, and, on this record,
24 the USDA's decision was likely neither arbitrary nor capricious.  Id.

25   While Plaintiffs' instant motion fails on that basis alone, it also fails for the
26 additional reason that Plaintiffs have not shown that the suspension will result in
27 irreparable harm.  Contrary to Plaintiffs' bare assertions that SNAP transactions
28 comprise 35% of Lower Sac Chevron's sales, and that the store's suspension from the

4

SNAP Program will be fatal to its continued operation, Defendant offered evidence that SNAP transactions actually made up less than 2% of Plaintiffs' monthly sales. Seuferer Decl., ECF No. 10-1, ¶ 3. Plaintiffs have not offered any evidence (or even argument) as to how the loss of less than 2% of their sales will cause irreparable harm. Accordingly, their Motion is denied on this basis as well.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Preliminary Injunction (ECF No. 4) is DENIED.

IT IS SO ORDERED.

Dated: April 19, 2016

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT